TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
MACK E. JENKINS (Cal. Bar No. 242101)
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section
MAX B. SHINER (Cal. Bar No. 187125)
Deputy Chief, Violent & Organized Crime Section
WILSON PARK (Cal. Bar No. 239527)
Assistant United States Attorneys
Violent & Organized Crime Section
     1500/1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2091/3308/5796
     Facsimile: (213) 894-6436
     E-mail:    mack.jenkins@usdoj.gov
                max.shiner@usdoj.gov
                wilson.park@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 14-338(A)-SJO-42 |
|---|---|
| Plaintiff, | GOVERNMENT'S RESPONSE TO DEFENDANT ERSKIN CARTER'S SENTENCING MEMORANDUM |
| v. | |
| TYRINE MARTINEZ, et al., [ERSKIN CARTER] | Sentencing Date: 3/29/21<br>Sentencing Time: 11:30 a.m. |
| Defendants. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney's Office for the Central

///

///

///

///

///

District of California, hereby files its Response to Defendant ERSKIN CARTER's Sentencing Memorandum.

Dated: March 22, 2021          Respectfully submitted,

                                         TRACY L. WILKISON
                                         Acting United States Attorney

                                         BRANDON D. FOX
                                         Assistant United States Attorney
                                         Chief, Criminal Division

                                                /s/
                                         MAX B. SHINER
                                         Assistant United States Attorney

                                         Attorneys for Plaintiff
                                         UNITED STATES OF AMERICA

**I.   INTRODUCTION**

Defendant ERSKIN CARTER is the last of 72 co-defendants to be sentenced in this case. Defendant pleaded guilty on October 23, 2017. The Presentence Report ("PSR") was filed on December 11, 2017 (CR 3043). The government filed objections to the PSR on December 26, 2017 (CR 3067). The government filed a sentencing position on April 2, 2018 (CR 3366).

After nearly three years of delay, and following the retirement of District Judge S. James Otero, who presided over two jury trials and all of the sentencings in this case (save one), defendant filed a sentencing memorandum on March 2, 2021 (CR 4185). While not disputing the offense level set forth in the PSR, defendant asks this Court to impose a sentence of time served, which would amount to approximately half of the sentence called for by the erroneously low Guidelines range that the Probation Office proposes.

The government submits the following arguments and exhibits in response to defendant's Sentencing Memorandum and sentence recommendation.

**II.  ARGUMENT**

    **A.   The Sentencing Guidelines Call for a Base Offense Level of 43 for the Murder Conspiracy Because of His Admissions in the Plea Agreement Without Regard to Whether Defendant Carter Personally Murdered Victim W.S.**

As admitted in the plea agreement (CR 2783 at ¶ 16.c.), and as conceded in defendant's sentencing memorandum (CR 4185 at p.4), defendant took part in a racketeering conspiracy involving conspiracy to commit murder as one of the racketeering acts. Defendant errs, as did the Probation Office, in ignoring this fact and arguing that the base offense level for the murder conspiracy should be 33.

1

The reason for the error is simple: the relevant Guidelines section calls for an increase in the base offense level where "the offense resulted in the death of a victim." USSG § 2A1.5(c).

Defendant states that he "adamantly denies and disputes the government's position that [he] personally participated in [the murder of W.S.] or any other murder." (CR 4185 at p.4.) However, while the evidence is clear and convincing that he did indeed participate in that murder, such a finding is not required to trigger the application of cross reference in § 2A1.5. Rather, the first degree murder guideline applies when the "offense resulted in the death of a victim." The evidence is overwhelming that Broadway Crips' murder conspiracy resulted in many, perhaps countless, deaths.

The murder of W.S. was just one of the deaths caused by the Broadway Crips racketeering conspiracy in which defendant admitted his participation. While this Court was not privy to the evidence presented at the trials in this matter, this evidence involved a long history of murders committed by the gang. Perusal of the attached transcripts of sentencing hearings of co-defendants in this matter reveals that Judge Otero found that members of the Broadway Crips did commit murders as part of the racketeering conspiracy. (See, e.g., Exhibit 1 (Transcript of Sentencing of Marquis Shaw) at pp.10-11 (court finds defendant participated in two murders).)

Defendant's position that his offense cannot be found to have resulted in the death of a victim presents a logical inconsistency. Defendant admitted his agreement to a murder conspiracy as part of the gang's racketeering. If defendant's claim is that he was not a part of the W.S. murder conspiracy, or any other murder conspiracy of a particular victim, he must have simply admitted that the offense

2

involved a general agreement that the gang commits murder as a racketeering activity. But factually, this generalized agreement that the gang conspires to murder must also trigger the Section 2A1.1 cross reference, in that it is beyond refute that the Broadway Crips killed many victims as part of its racketeering conduct.

Had this Court presided over the trials in this matter, there would be little need for discussion on this point. Each of the trials in this case involved evidence that one of the main activities of the Broadway Crips was murder. In fact, in the trial of defendant Tony Gordon, about whom no evidence that he personally murdered a victim was presented, the jury nevertheless found, after hearing substantial evidence of the Broadway Crips' racketeering activities, that the gang's pattern of racketeering activity included acts involving murder.[1] (Exhibit 3 at p.2.)

Clearly defendant knew of these criminal activities. As defendant admits in his sentencing memorandum, "Defendant would, in support of the racketeering and drug conspiracies, direct younger Broadway Crips members to engage in violence against rivals and insubordinate members. . . . There are other statements of fact supporting Defendant's plea that acknowledge the violence with which the Broadway Crips would engage." (CR 4185 at p.4.) As someone who had a longstanding membership in the Broadway Crips and, in fact, directed other members to engage in violence, defendant cannot credibly claim that his agreement to the gang's murder conspiracy did not involve the death of a victim. Section 2A1.1's base offense level of 43 therefore applies.

---

[1] Co-defendant Tony Gordon was sentenced to 360 months' imprisonment. (CR 2564.)

3

**B.  Defendant's Claim that There is Insufficient Reliable Information to Support a Finding that Defendant is Accountable for the Murder of W.S. has Repeatedly Been Rejected**

The evidence of defendant's involvement in the murder of W.S. is compelling, and the claim that it rests solely on the word of a cooperating witness or that the evidence cannot support defendant's involvement has been repeatedly rejected by Judge Otero.

For example, co-defendant Ravon Murrley, who also participated in the shooting of W.S., entered into a plea agreement similar to defendant's. As did defendant, Murrley pleaded guilty to the racketeering conspiracy and admitted that the racketeering involved conspiracy to commit murder. (CR 2782 at ¶ 16.c.) Further, as is the case here, the parties had no agreement as to the base offense level for the racketeering conspiracy. (Id. At ¶ 19.) The Probation Office did the same calculation it did here, calculating a total offense level of 31 for murder conspiracy under USSG § 2A1.5. (Exhibit 2 (transcript of sentencing of Ravon Murrley) at p.5.)

Judge Otero, who presided over this case for six years, two jury trials, and 70 sentencings, found that the Probation Office had erred, and concluded that the evidence was clear and convincing that Murrley, along with defendant, participated in the murder of W.S.:

> And the totality of the evidence here reflects, you know, some extreme conduct. Separate and apart from that, **the government has, in the Court's view, established by clear and convincing evidence** that the defendant – that Mr. Murrley -- that Mr. Murrley not only has he been a long-time member and committed several acts of violence, but the government has established by clear and convincing evidence, with the exhibits that have been referenced here, **that he participated in the murder of WS, along with other coconspirators, including Carter,** Pete and Perez.
>
> I presided over the trial. And then there is another person of Mister -- is it Piget [sic] III. This is the murder,

4

> and this is all corroborated by the confidential source, but the murder was in reference to a killing of a Broadway Gangster Crips member that happened on the 6th of May, 2012. And then thereafter the defendant and others retaliated against a gang that they believed responsible for the murder, and that was the East Coast Crips.

(Exhibit 2 at pp.17-18. (emphasis added).) The Court based this finding on the same evidence presented here (See Government's Objection to Presentence Report for Defendant Erskin Carter at attached exhibits (CR 3067)) and further noted that the Probation Office simply did not analyze this evidence:

> The probation officer didn't do, in response to the government's objections, did not do a substantive response, but just simply reiterated that they were -- that the probation officer was standing by the initial position that the -- the level is 31 and not 43.
>
> * * *
>
> It appears that the probation officer simply chose to ignore the government's substantive pleading supporting its objections and didn't really delve into the reasoning or rationale as to why it was inaccurate.

(Exhibit 2 at pp.8-9.) The Court, acting on the same facts as established here, concluded that the base offense level was 43, and the Guidelines range 360 months to life imprisonment:

> The Court, having considered the sentencing factors in Title 18, 3553, the Guideline range of 360 to life, **the Court making a determination that clear and convincing evidence establishes that the defendant was involved in the murder of WS**. Again, the weapon that he used, the UZI jammed, and so the bullets from the -- from the UZI were not the bullets that killed WS, but he was involved with the others as articulated by the Court.
>
> The defendant is -- so the total offense level is 40 with acceptance of responsibility, and the Criminal History Category is VI. There is a 60-month statutory mandatory minimum as to Count Twelve.

(Exhibit 2 at pp.24-25 (emphasis added).)

///

5

Similarly, Judge Otero found that co-defendant Marquis Shaw, who was described as one of the drivers in the shooting of W.S., should be held responsible for that murder, based entirely on the testimony of the cooperating witness, as corroborated by the FBI's investigation. (Exhibit 1 at pp.60-61.)

Defendant further claims that the evidence of his participation in the murder of W.S. cannot be substantiated because it relies solely on the word of a cooperating witness. However, not only was the account of the murder of W.S. corroborated in numerous ways by the FBI investigators, the implication that the cooperating witness' testimony is not reliable was directly refuted by Judge Otero:

> In reference to the testimony of [cooperating witness], I would just comment that, for the most part, I tend to dismiss the testimony of cooperating witnesses who have much to gain in their endeavor to cooperate with the Government in seeking reduced sentences. That being said, that testimony is often considered if it's corroborated. **Personally, I thought [cooperating witness'] testimony in this case was some of the most compelling I've ever heard from a cooperating witness. He appeared to be extremely honest and forthright.** He expressed his reasons why he was testifying on behalf of the Government. **I thought his testimony was convincing and persuasive and compelling.**

(Exhibit 1 at pp.55-56 (emphasis added).)

### C. A Sentence in Line with the Government's Recommendation is Necessary to Avoid Sentencing Disparities

Defendant's recommended sentence would create a gross disparity in sentences between similar defendants in this case. A number of co-defendants who participated in the shooting of W.S. have received

///
///
///
///

6

sentences in line with the government's recommendation, based on the same or similar evidence presented here:

- Co-defendant Murrley, whose plea agreement and conduct were most similar to defendant's, received a sentence of **216 months' imprisonment.** (CR 4053.)
- Co-defendant Joshua Perez, who pleaded guilty mid-trial, admitting the facts of the shooting of W.S., was sentenced to **360 months' imprisonment.** (CR 3963.)
- Co-defendant Marquis Shaw, who Judge Otero found should be held responsible for the murder of W.S. (among other violent conduct), despite not being convicted of the RICO conspiracy, was sentenced to **420 months' imprisonment.**

Clearly, defendant's request for a sentence of time-served (approximately 81 months) is an unjustified variance from the presumptive sentencing range, and moreover, would create gross sentencing disparities with similar co-defendants.

**III. CONCLUSION**

For the foregoing reasons, the government respectfully asks the Court to reject defendant's request for a downward variance and impose the government's recommended 240-month sentence.

Dated: March 22, 2021                   Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

      /s/
MAX B. SHINER
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

7