Exhibit 2

1                    UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3              HONORABLE S. JAMES OTERO, U.S. DISTRICT JUDGE

4

5

6    UNITED STATES OF AMERICA,        )
                                      )
              Plaintiff,              )
7                                     )
                  vs.                 )
8                                     )   2:14-CR-338-SJO
     RAVON MURRLEY,                   )
9                                     )
              Defendant.              )
10   _____ )
                                      )
11                                    )
                                      )

12

13

14

15              REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                   Los Angeles, California

17                   Monday March 9, 2020

18

19

20         _____

21              AMY DIAZ, RPR, CRR, FCRR
                Federal Official Reporter
                350 West 1st Street, #4455
22              Los Angeles, CA 90012

23

24   *Please order court transcripts here:  www.amydiazfedreporter.com*

25

```
 1       APPEARANCES OF COUNSEL:

 2

         For the Plaintiff:
 3

 4                        United States Attorney
                          By:  MAX SHINER
 5                             WILSON PARK
                               Assistant United States Attorneys
 6                        United States Courthouse
                          312 North Spring Street
 7                        Los Angeles, California 90012

 8

 9       For the Defendant:

10                        By:  PATRICK MCLAUGHLIN, Attorney at Law
                               Law Offices of Patrick McLaughlin
11                        205 South Broadway, Suite 902
                          Los Angeles, California 90012
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          THE CLERK:  Calling item number two, case number

2     CR-14-00338(A)-SJO, United States of America vs. Defendant

3     Number 40, Ravon Murrley.

4          Counsel, would you state your appearances.

5          MR. SHINER: Good morning, Your Honor.  Max Shiner

6     and Wilson Park for the United States.

7          MR. MCLAUGHLIN: Patrick McLaughlin and Ravon

8     Murrley, who is present and in custody.

9          THE COURT:  Good morning.  May I have Mr. Murrley

10    and counsel, Mr. McLaughlin, at the lectern, please?

11         So the matter is here for purposes of sentencing.

12    And there is various documents and pleadings that the Court

13    has reviewed and considered in preparation for today's

14    hearing.  I just want to make sure everything is covered.

15         So the Court has read and considered the presentence

16    investigation report dated, prepared January 3rd, 2018.  The

17    Court has reviewed the government's objections to the

18    presentence investigation report of Mr. Murrley.  The Court

19    has reviewed the government's sentencing pleading regarding

20    Mr. Murrley.  The Court has reviewed the defendant's

21    sentencing pleading, and the Court has reviewed the letter of

22    recommendation to the Court from the Probation Department.

23         In reference to the government's pleading, the

24    government references that the PSR calculated a total offense

25    level of 31 with a Criminal History Category IV.  In the PSR,

1    the probation officer calculated that the Guideline range was

2    188 to 235 months.  The government in their pleading

3    references that they agree with most of the calculations in

4    the PSR; however, with respect to the RICO drug trafficking

5    count, the government objects to the two-level -- and counsel

6    for the defendant joins in that objection -- the government

7    objects to the two-level enhancement under 2D1.1(b)(2) for

8    threatening and directing the use of violence in reference to

9    that count.

10           Just to capitalize quickly, the government believes

11   that there is no credible evidence that the defendant, in

12   reference to that count, threatened violence in connection

13   with the drug trafficking.

14           The government objects to the -- also to the PSR's

15   failure to apply a first degree murder guideline under

16   2A1.1(c)(1) because the RICO murder conspiracy, which

17   involved the RICO murder conspiracy count, because that --

18   the defendant's participation in that RICO murder conspiracy

19   resulted in the death of a victim.  The death has been --

20   that person has been identified as WS, a person who was not a

21   member of the East Coast Crips.

22           The government submits that the Guideline should

23   apply, that the defendant's participation in the conspiracy

24   resulted in the death of WS, and the government submits that

25   the base level is 43, not 31 as calculated by the probation

1    officer.  And then with acceptance of responsibility, the

2    government believes that the total offense level becomes --

3    the -- with adjustments, becomes 40.  The defendant is in a

4    Criminal History Category VI.  The government has recommended

5    a variance off the Guideline range and recommends a sentence

6    of 240 months, eight years supervised release, $200 special

7    assessment, no fines, and then conditions of supervised

8    release that were stipulated in the plea agreement.

9        So that summarizes briefly the government's

10   pleading.

11        In reference to the government's objections, the

12   government has offered various documents and evidence in

13   support of its claim that the defendant's plea as to Count

14   Twelve -- I'm sorry -- the defendant's plea as to the RICO

15   murder conspiracy resulted in the death of WS, and the Court

16   has offered numerous exhibits and other evidence to support

17   its claim that there is clear and convincing evidence that

18   the defendant participated in that retaliatory shooting,

19   utilizing an UZI, that apparently jammed at the time, but

20   offering that there is clear and convincing evidence to

21   support that he was -- he participated in that murder

22   conspiracy resulting in the death of WS.

23        The -- Mr. McLaughlin agrees that the -- that the

24   adjusted offense level for Count One should be 33, pursuant

25   to United States Sentencing Guideline 2A1.5.  The --

1     Mr. McLaughlin contends that the adjusted offense level for

2     Count Two should be 26, for the reasons stated by the

3     government in their sentencing pleading.

4            Mr. McLaughlin believes, nevertheless, that the

5     total offense level should be 31, as calculated by the

6     probation officer, Criminal History Category VI, the

7     Guideline range is 188 to 235.  And Mr. McLaughlin moves for

8     a variance for a number of 3553 factors, for a sentence of

9     120 months, five years supervised release.

10           And then in reference to the variance to support a

11    120-month sentence, Mr. McLaughlin cites the personal history

12    of the defendant involving a brother who was -- who was

13    murdered when the defendant was at a very young age, which

14    placed the defendant in a vulnerable position, and he had a

15    father who was never present; and then therefore became

16    involved and immersed in gang life at a very, very young age,

17    and has a substance abuse issue that is significant.

18           So just, Mr. Murrley, have you had the opportunity

19    to review the presentence investigation report, sir?

20           THE DEFENDANT: Yes, sir.

21           THE COURT:  And then did you discuss the contents

22    with your counsel?

23           THE DEFENDANT: Yes, sir.

24           THE COURT:  And did you have an opportunity to

25    review the government's objections and the government's

```
 1   sentencing pleading, also?

 2          THE DEFENDANT: Yes, sir.

 3          THE COURT:  And then your counsel's sentencing

 4   pleading?

 5          THE DEFENDANT: Yes, sir.

 6          THE COURT:  And do you feel that you had enough time

 7   to consider everything in light of the sentencing today?  Do

 8   you think you've had enough time?

 9          THE DEFENDANT: Um, yes, sir.

10          THE COURT:  Okay.  Well, I notice some hesitation on

11   your part.  I can take a short recess and you can spend more

12   time with your counsel.

13          THE DEFENDANT: I'm good.

14          THE COURT:  Okay.  So Mr. McLaughlin, I took the

15   liberty to summarize the pleadings here.  I want to make sure

16   that my summary was accurate.  So if there is any additional

17   information -- I -- there was other letters that were

18   provided to the Court today.

19          MR. MCLAUGHLIN: Yes, Your Honor.  There were letters

20   that were previously filed, I believe on Friday, and then

21   there was some letters that came in over the weekend.  I gave

22   copies to the Court.

23          THE COURT:  Yes.

24          MR. MCLAUGHLIN: The only other thing I would say in

25   characterizing my position is that the probation officer,
```

1    both initially in their first addendum, and then subsequent

2    in their second addendum, disagree with the government's

3    position that Mr. Murrley should be subject to a total

4    offense level of 40.  And I just, I wanted to highlight that.

5            But otherwise, the Court has accurately summarized

6    my --

7            THE COURT:  Yes.  The probation officer didn't do,

8    in response to the government's objections, did not do a

9    substantive response, but just simply reiterated that they

10   were -- that the probation officer was standing by the

11   initial position that the -- the level is 31 and not 43.

12           MR. MCLAUGHLIN: Otherwise, that is fine, Your Honor.

13           THE COURT:  So is there any additional argument you

14   would like to make?  I would like to hear from the government

15   first.

16           Does the government wish to respond to any of this?

17   I tried to summarize as best as I could, but if you have

18   additional argument or statements to make, feel free.

19           MR. SHINER: Well, thank you, Your Honor.

20           Yes, I think everything you said was accurate.  And

21   I would just address the -- what you said about the probation

22   officer's addendums, I think it is correct, their responses

23   to our objections were not really substantive.  It was just a

24   matter of them stating that their view of the evidence did

25   not -- which seems to be primarily based on their reading of

|    |                                                                      |
|----|----------------------------------------------------------------------|
| 1  | the plea agreement alone, did not -- did not justify them           |
| 2  | finding that the offense resulted in death.                          |
| 3  | Obviously, we disagree with that. We have quite a                    |
| 4  | bit of documentation, not just in this, in what we submitted         |
| 5  | to the Court, but throughout the pendency of this case, which        |
| 6  | now has boiled down to the last two of 70 defendants being           |
| 7  | sentenced. That indicates that indeed the gang's                     |
| 8  | racketeering conspiracy and their object of murder conspiracy        |
| 9  | did result in deaths, multiple deaths, in fact, but                  |
| 10 | specifically the death of WS.                                        |
| 11 | It was well-documented in the reports, the                           |
| 12 | informant, who was very precise and detailed in his account          |
| 13 | of what occurred while he was still essentially an insider in        |
| 14 | the gang, explained how WS's death came about. That was              |
| 15 | corroborated by extensive investigation. All of that was             |
| 16 | presented at the trial in this case, as well as documented in        |
| 17 | the report submitted to the Court in this sentencing.                |
| 18 | So we do disagree with Probation here. I don't                       |
| 19 | think that their response really adequately, or really               |
| 20 | anything more than just summarily discusses the facts of that        |
| 21 | murder.                                                               |
| 22 | THE COURT: It appears that the probation officer                     |
| 23 | simply chose to ignore the government's substantive pleading         |
| 24 | supporting its objections and didn't really delve into the           |
| 25 | reasoning or rationale as to why it was inaccurate.                   |

1          MR. SHINER: And that has been something that we've

2     often objected to during the pendency of this case.  It seems

3     like a policy that when there is more factual matter, that

4     they wish to leave that determination to the Court, which

5     is --

6          THE COURT:  Right.

7          MR. SHINER -- which is fair, but I think that I

8     would ask the Court to make those findings itself, because

9     there is substantial evidence, clear and convincing evidence.

10         THE COURT:  Mr. McLaughlin, do you have any comment?

11         MR. MCLAUGHLIN: Well, no, Your Honor.  I would

12    just -- I would just urge the Court to look at the, I guess

13    the practicalities of this.

14         If one were to accept the government's position that

15    Mr. Murrley, in fact, was looking at a 30 years to life

16    sentence, that 30 years would exceed the statutory maximum on

17    Count One by 10 years.  They did not plead Count One as they

18    could have, life top RICO case, they didn't.  They chose to

19    file it, for whatever reason, as a 20-year top.

20         So therefore, if in fact the Court were to -- and

21    I'm not suggesting the Court should do so, nor does the

22    government -- the Court would have to -- to get to 30 years,

23    the Court would have to do the following:  They would have to

24    give Mr. Murrley the statutory maximum on Count One, and

25    consecutive to that give him 10 years on Count Two.  Again,

1    I'm not suggesting you should do that.

2         My point is Mr. Murrley entered a plea in this case.

3    And I remember, and I reminded Mr. Murrley this at the time,

4    that what the Court at the time of the change of plea in

5    effect paid Mr. Murrley a compliment, telling him how

6    difficult he knew this was for Mr. Murrley to make this

7    decision to enter this plea.

8         And I remembered that, and I was struck by those

9    comments.  And again, so the government has said you

10   should -- the total offense level should be 360 to life, but

11   then says, but, you know, because of a circumstance, we are

12   going to request a 10-year variance.

13        Now, I have a lot of respect for both government

14   counsel, don't get me wrong.  I'm not suggesting there is

15   anything foul play here, but the reality is, what they are

16   suggesting is that the Court sentence Mr. Murrley to the

17   statutory maximum on Count One, based upon his entry of a

18   guilty plea to that offense.

19        And I just think that is inappropriate.  The

20   Guideline range, Sentencing Guideline range, to which we have

21   not objected, and to which Probation agrees, is 188 months to

22   235 months.  I have asked, admittedly, for a 68-month

23   variance, which is substantial, no question about it.  But

24   there are a number of factors that I mentioned in the papers

25   that I want to reiterate, Mr. Murrley has never done longer

1    than six years in any prior convictions.  That is the longest

2    sentence ever imposed.  A 10-year sentence would be

3    substantially longer than that, A.

4          B, Mr. Murrley, the family characteristics that I

5    have talked about in terms of his upbringing, that the Court

6    has alluded to, were difficult, to say the least.  And in

7    some sense, if Mr. Murrley's brother had never been murdered,

8    I don't think we would be here today.  We talked about, in

9    the presentence report, about how he and his brother used to

10   ride bicycles to USC.  That is not the kind of conduct at an

11   early age that points towards gang affiliation and gang

12   crimes, etcetera.

13         But in addition to that, let's bring him out of the

14   2020.  As the Court can see from the letters referenced in

15   the presentence report and my sentencing memorandum,

16   Mr. Murrley's mother is in the, basically, the last stages of

17   renal failure.  She's on dialysis and all that.

18         Now, Mr. Murrley has a woman with whom he has had

19   three children, but she also has significant medical issues

20   that are again referenced in the letters that are before the

21   Court.

22         Both of those women were to be here today.  My guess

23   is they are -- got stuck in traffic or something, but in

24   addition to that, Mr. Murrley's oldest son was going to be

25   here today.  And I want to reiterate to the Court that as of

1        Friday, they fully intended to be before this Court to

2        demonstrate their support for Mr. Murrley.

3            I believe that a 120-month sentence would be an

4        appropriate sentence for Mr. Murrley.  I'm suggesting five

5        years of supervised release because that is the mandatory

6        minimum required by Count Twelve.  I agree, obviously, there

7        should be a $200 special assessment.  I agree, also, that

8        there should be no fine.

9            And then two other requests, which I can make now or

10       I can make later, and that is the Court make a

11       recommendation -- I'll make them now -- that Mr. Murrley be

12       designated to Lompoc Federal Correctional Institution.

13           And finally, I would also ask, based upon the

14       evidence in the presentence report primarily, that the Court

15       make a recommendation that he be -- the Bureau of Prisons

16       consider him for the RDAP program.  He's obviously got a

17       problem with, particularly marijuana, and also alcohol.

18           But also, Mr. Murrley would like to address the

19       Court.  He has written a letter, but he would like to read

20       the letter to the Court by way of allocution.

21           MR. SHINER: If I could, before we hear from the

22       defendant, if I could comment on a couple of things? Because

23       I think the record needs to be made clear.

24               THE COURT:  Sure.  Go ahead.

25               MR. SHINER: A couple of things.  First, just so the

1    record is clear, the term of supervised -- minimum term of

2    supervised release on Count Four is four years, not five.

3              THE COURT:  I'm sorry.  The minimum?

4              MR. SHINER:  Term of supervised release on Count

5    Twelve is four years.

6              THE COURT:  Yes.

7              MR. MCLAUGHLIN:  That's correct, actually.  I'm still

8    asking for five.

9              MR. SHINER:  And the maximum is life.  I want to make

10   sure that the minimum is clear.

11             Secondly --

12             THE COURT:  And the maximum imprisonment on count --

13   on that count is 40 years?

14             MR. SHINER:  40 years, correct.

15             So that is the other point.  The maximum on Count

16   One is 20, the maximum on Count Twelve is 40, so there is a

17   60-year total maximum that the defendant is facing.  So it's

18   not like he's -- that the government is asking that he be

19   sentenced to the maximum term or anything close to it,

20   especially on Count Twelve, as the Guidelines require.  The

21   Guideline sentence should be imposed in such a manner that

22   the counts run consecutively or concurrently if they can, and

23   that is certainly what could be done in this case.

24             I had another point I wanted to make, which was that

25   it wasn't clear from defense counsel's statement what the

1    Guideline range is.  Even under his interpretation and the

2    Probation Office's interpretation of the Guidelines, even if

3    it is -- even if we used the conspiracy to commit murder

4    Guideline, which there is no dispute applies because the

5    defendant admitted it in his plea agreement very clearly, the

6    Guideline range would be 188 to 235 months.

7            So even if they accept -- if you accepted

8    Probation's Guideline calculation, the government's

9    recommendation is only five months above the Guideline range.

10   It's not a 10-year variance.  It's very much within the range

11   of what the Guidelines call for.

12           But I think we have to take into account two facts:

13           One, that a death was involved; and, two, that that

14   Guideline range doesn't even account for all of the conduct

15   that the defendant admitted in his plea agreement.

16           For example, he admitted that one of the objects of

17   the conspiracy was robberies.  And he admitted that he

18   committed, or acts in furtherance of that, by forming robbery

19   crews.  And in fact, he committed that he -- he admitted that

20   he formed a crew and did surveillance of banks and bank

21   customers and actually burglarized cars when they weren't

22   able to find a bank to rob.

23           So he engaged in that conduct as well that really

24   isn't incorporated in the Guidelines in the sense that it

25   doesn't raise the Guideline level at all.

1      So the defendant's conduct is very serious.  I think

2      the government's recommendation needs to account for that,

3      but it is also very much in line with what the Guidelines

4      call for.  And those are the only points I wanted to make.

5      THE COURT:  Yes.  And so we have the Guideline

6      calculation, but separate and apart from that we have the

7      3553 factors.

8      So before you respond, Mr. McLaughlin, there is

9      the -- you know, one of the glaring issues in the case is,

10      with Mr. Murrley, is the -- his long history of being a

11      member and a participant in the Broadway Gangster Crips since

12      1997, as referenced in the plea agreement.  But separate and

13      apart from that, his significant history of committing crimes

14      of violence and crimes involving weapons.

15      As the government has articulated in its pleading,

16      you know, in 1997 -- and I'm doing this for purposes of the

17      record -- but in 1997, possessing a .25 caliber handgun

18      inside his car.  In 2004, a stop by police officers and the

19      defendant is found with another handgun.  He has carried

20      loaded firearms and other weapons and has committed various

21      violent acts, including the admission that he and other

22      members used firearms, tasers, zip ties, and formed robbery

23      crews that targeted businesses, and then local residents, and

24      targeting the persons visiting banks, and followed them from

25      the bank home, and then robbed them of cash.  And in 1998,

1    second degree robbery.  He received six years in prison.

2    2008, another robbery where the victim was held at gunpoint,

3    punched in the mouth, pulled out of a car, punched again,

4    kicked, stomped on by defendant and others he was working

5    with.

6         In 2014, another act of violence.  The defendant

7    terrorized a victim who lived in the projects.  And then the

8    defendant and others attempted to enter the victim's home.

9    The victim obviously terrified.

10        And the totality of the evidence here reflects, you

11   know, some extreme conduct.  Separate and apart from that,

12   the government has, in the Court's view, established by clear

13   and convincing evidence that the defendant -- that

14   Mr. Murrley -- that Mr. Murrley not only has he been a

15   long-time member and committed several acts of violence, but

16   the government has established by clear and convincing

17   evidence, with the exhibits that have been referenced here,

18   that he participated in the murder of WS, along with other

19   coconspirators, including Carter, Pete and Perez.

20        I presided over the trial.  And then there is

21   another person of Mister -- is it Piget III.  This is the

22   murder, and this is all corroborated by the confidential

23   source, but the murder was in reference to a killing of a

24   Broadway Gangster Crips member that happened on the 6th of

25   May, 2012.  And then thereafter the defendant and others

1    retaliated against a gang that they believed responsible for

2    the murder, and that was the East Coast Crips.

3         And they went out to retaliate, and the defendant --

4    it's clear that the defendant, because of his admissions,

5    used an UZI.  It's clear that the UZI apparently jammed, but

6    it was a high caliber clip.  The UZI was recovered.

7         The defendant's participation in that murder was --

8    is pretty clear.  What didn't happen is, you know, the weapon

9    he was using at the time didn't -- wasn't the weapon that

10   killed the WS, but certainly he's a clear participant.

11        So it would appear that with the Guideline analysis,

12   it's 43, but you know, we have put that aside for a while and

13   look at what the appropriate sentence in the case is.  We

14   know one of the issues is the defendant's age.  He's now 42.

15        So the concern is how much time is required for him

16   to be less of a threat to society?  If we look at the past,

17   his past acts of violence, we look at the past to predict the

18   future, his past suggests that the future -- in the future he

19   may continue to commit violent acts.

20        MR. MCLAUGHLIN: May I address that point

21   specifically?

22        THE COURT:  Yes.  But at some point in time with the

23   aging factor, he's less of a threat.

24        MR. MCLAUGHLIN: Two issues.

25        The aging factor alone, Mr. Murrley is now 42.  By

1     the time he's sentenced, as I say in my memorandum, he's

2     going to be in his 40s or his 50s, or whatever.

3          Apart from that, other than a drug trafficking count

4     or a drug trafficking offense in state court, which was

5     pending at the time he went into custody in this case, so

6     there is now a bench warrant out of the Criminal Courts

7     building.

8          The last two convictions Mr. Murrley has were not

9     violent.  They were not felonies.  They were a DUI and a

10    trespass.  And I can reference the material in the

11    presentence report.

12         So my point is that already there has begun, by

13    Mr. Murrley, a decrease, if you will, not an increase, in

14    criminal conduct.

15         Paragraph 77 of the presentence report references a

16    February of 2013 arrest for trespassing, which he in 2014

17    apparently received diversion.  And then 2017, four days

18    county jail, time served, but again, a misdemeanor.

19         And then later that same year, an arrest in April of

20    2013 for driving under the influence, was placed on

21    probation. And June of 2013.

22         So his conduct, if you will, other than -- again,

23    other than the -- a drug count, or a drug offense -- felony

24    drug offense pending in the Criminal Courts building, his

25    conduct was going from violent felonies to, I would say --

1      and I don't mean to diminish driving under the influence, but

2      relatively minor misdemeanors.

3             So besides the fact of aging, one can look at the

4      criminal history, and one can emphasize the earlier conduct

5      by Mr. Murrley, which is appropriate to look at, but also I

6      think, and it's important, if the Court, in making a

7      decision, should look at what has happened at the end,

8      towards the end, before he went into custody on this case.

9      And the last two convictions, as I said, were misdemeanors.

10     The only felony pending was the one for which he was

11     apparently released on bond.  Had a case pending in Criminal

12     Courts building, was taken into custody on this case, so now

13     there is a warrant for his arrest.

14            So I think that there is -- the Court can take some

15     confidence in the idea that besides just his age,

16     chronological age today, that the history, as opposed to

17     starting out with trespassing and DUI, and then escalating,

18     if you will, it's done exactly the opposite.  With one

19     exception, and as I said, the case that is pending in the

20     Superior Court, the case number is BA420156.

21            THE COURT:  Yeah.  Well, he has been in custody

22     since what period of time?

23            MR. SHINER:  2014.

24            MR. MCLAUGHLIN:  June 17th, 2014.  So it would be six

25     years this coming June.

```
1          MR. SHINER: Your Honor, I would like to comment on
2     that last point.
3          THE COURT:  Yeah.  So if we look at his plea, he has
4     been in custody since 2014, but in 2012, he's involved in
5     some serious conduct.
6          MR. SHINER: Actually, in 2014, Your Honor.  The WS
7     murder occurred in May of 2012, which is the year before.
8          THE COURT:  That's what I'm referring to.
9          MR. SHINER: But even after that, in May of 2014, he
10    helped organize an effort to sort of terrorize a resident of
11    the neighborhood to get out of there because it was Broadway
12    Crips and he was able to recruit some of his other fellow
13    members to do that.  And so that was when he was at least
14    34 years old, 35 possibly.
15         THE COURT:  Okay.  So, look, there is I think valid
16    points on both sides.  So anything further, Mr. --
17         MR. MCLAUGHLIN: No, Your Honor.  Mr. Murrley would
18    like to address the Court, and I believe family members now
19    have arrived.
20         THE COURT:  I see the family members.
21         MR. MCLAUGHLIN: He'll tell the Court who is present.
22         THE COURT:  So in reference, so that we have a clear
23    record, in reference to the government's objections, the
24    Court is going to sustain the objection.
25              The Court would conclude that clear and convincing
```

1    evidence establishes that the Guideline 2A1.5(c)(1) applies,

2    and the base level is 43, not 31.

3           And the Court is going to sustain the objection by

4    both counsel to -- as to Count One in reference to using

5    violence, or threatening violence during the commission of

6    the drug trafficking offense.  So, but in any event, it's 43.

7           And with that being said, there is 3553 factors, I'm

8    not going to impose 36 -- 360 months in prison.  The

9    government has moved for a 240-month or 20-year sentence, and

10   the question is what is the appropriate sentence.

11          So let me hear from Mr. Murrley first.

12          THE DEFENDANT:  Good morning.

13          Dear Honorable Judge Otero, I would first like to

14   thank the Court for allowing me the opportunity to accept

15   full responsibility for my actions that assembles us here

16   today.  I would also like to apologize to the Court, my

17   family, my community, for not making better choices and

18   decisions.

19          I was a good kid growing up.  However, so much bad

20   going on around -- going on around me.  My mother and my

21   grandmother, may God bless her soul, did what they could to

22   make me and my older brother, my only brother, good men, but

23   it failed.  Damn.  I'm sorry.  Know I failed.

24          My brother was my best friend.  I looked up to him.

25   He was already doing what he shouldn't have been doing, and

1      as a result of that, he lost his life.  That right there

2      should have told me to stay a kid, but it didn't.  It just

3      made me bitter.  It turned a kid into a product of his

4      environment.

5                The drugs and alcohol in my life every day, I became

6      lost and swallowed up by my environment.

7                I make no excuses for me being here today.  I let my

8      family down.  I let my community down in a place where I'm

9      supposed to uprising and make even better place today.  I let

10     my family down.

11               I can't even see.  I make no excuses for me being

12     here today.  I let my family down, my community down, the

13     place where I'm supposed to be raising and making a better

14     place for the youth of today.

15               I have three children.  My oldest son, Ravon

16     Murrley, Jr., right there, my middle daughter, 15, and my

17     youngest daughter, six.  I love my family dearly, and I let

18     them down dearly.  I can never get in the time I have taken

19     away from them, all from bad choices I made in my life.

20               I hope, with the Court's mercy, that I can get help

21     towards my drug and alcohol addiction, and become a strong

22     and productive person towards society that I know I was

23     raised to be.  I was raised to be a better father to my

24     children and a better son to the one that gave me my life, my

25     mother Nelly Stewart.

1    Your Honor, I have been floating through life with

2    no sense of direction for most of my entire life.  These past

3    five years, nine months has been so much of a learning

4    experience that it just dawned on me why I'm here, I have

5    been living my life without family first.  I'm a father now.

6    It is not about me.  It is about those that need me most.  My

7    family and kids, wife, who is suffering from Lupus, and my

8    mother, who is suffering from diabetes and kidney failure and

9    could barely make it here today, but managed to get here for

10    her baby.

11    Your Honor, I get it.  Family is the keys to life.

12    I plead with the Court to have mercy on me here today.  I

13    truly do apologize to those affected by the actions of me,

14    and those who came here before me on this case.  I just want

15    to spend the rest of my life rebuilding what I almost

16    destroyed, and that is my family.

17    Thank you, Your Honor.  And one thing, I'm, I was --

18    you know, I was a thief, but, you know, I'm not no murderer,

19    sir.  I might steal, but I'm not no murderer, sir.

20    Thank you.

21    THE COURT:  Anything further?

22    MR. MCLAUGHLIN: Nothing further, Your Honor.  Thank

23    you.

24    THE COURT:  I think I ruled on the objections.

25    The Court, having considered the sentencing factors

1    in Title 18, 3553, the Guideline range of 360 to life, the

2    Court making a determination that clear and convincing

3    evidence establishes that the defendant was involved in the

4    murder of WS.  Again, the weapon that he used, the UZI

5    jammed, and so the bullets from the -- from the UZI were not

6    the bullets that killed WS, but he was involved with the

7    others as articulated by the Court.

8            The defendant is -- so the total offense level is 40

9    with acceptance of responsibility, and the Criminal History

10   Category is VI.  There is a 60-month statutory mandatory

11   minimum as to Count Twelve.

12           It is ordered that the defendant shall pay a special

13   assessment of $200.  Unpaid balance should be paid during the

14   period of imprisonment at the rate of not less than $25 per

15   quarter.

16           The fines are waived.  The defendant does not have

17   the ability to pay a fine.

18           Pursuant to the Sentencing Reform Act, it's the

19   judgment of the Court that Mr. Murrley is hereby committed on

20   Counts One and Twelve of the First Superseding Indictment to

21   the custody of the Bureau of Prisons to be imprisoned for a

22   term.  In sentencing -- in imposing the term that the Court

23   is going to impose, the Court has considered that the

24   defendant is now 42, and I'm trying to calculate that when he

25   serves his sentence, because of age, he'll be less of a

1    physical threat to members of the community. So the Court is

2    going to impose a sentence of 216 months.  Two years less

3    than asked for by the government.

4         The term consists of, let's see, of 120 months on

5    Count One, 120 months on Count One, an additional 96 months

6    on Count Twelve, to be served consecutive to the 120 months

7    on Count One, for a total of 216 months. Of the First

8    Superseding Indictment.

9         Upon release, he shall be placed on supervised

10   release for a term of eight years.  The term consists of

11   three years on Count One, and eight years on Count Twelve,

12   all terms to run concurrently under the following terms and

13   conditions:

14        Comply with rules and regulations of the Probation

15   Department.  General Order 05-02.  Not commit any violation

16   of local, state, federal law, ordinance.  Refrain from

17   unlawful use of controlled substance.  Submit to one drug

18   test within 15 days of release.  At least two periodic drug

19   tests, not to exceed eight tests per month.  Participate in

20   outpatient substance abuse treatment and counseling.  That

21   includes urinalysis, breath and sweat patch testing.  Abstain

22   from using alcohol or illicit drugs, and abusing prescription

23   medication.

24        The defendant shall pay all or part of the costs of

25   the court-ordered program to the aftercare contractor.  If he

1    has no ability to pay, no money is required, no payment is
2    required.  When not employed or excused by the probation
3    officer for schooling or training, he shall perform 20 hours
4    of community service per week as directed by probation.
5    Cooperate in the collection of a DNA sample.  Not associate
6    with anyone known by him to be a member of the Five Deuce
7    Broadway Gangster Crips and others known to him to be
8    participants in the Five Deuce Broadway Gangster Crips
9    criminal activities, with the exception of family members.
10   Not wear, display, use, possess any gang insignias:  Emblems,
11   buttons, badges, caps, hats, jackets, shoes, or any other
12   form of clothing that defendant knows evidence affiliation
13   with the Five Deuce Broadway Gangster Crips.  Not display any
14   signs or gestures that he knows evidence affiliation with a
15   gang.  The defendant shall not be present in any area known
16   to him to be a location where the members of the Five Deuce
17   Broadway Gangster Crips assemble.  Not reside in any area
18   known as the Broadway Gangster Crips controlled territory,
19   which includes territory claimed in South Los Angeles defined
20   as follows:  To the North Vernon Avenue to the East Avalon
21   Boulevard to the west of the 110 freeway, and to the South
22   Slauson Avenue without prior expressed approval of the --
23   prior expressed written approval of the probation officer.
24        He shall submit to a search at any time, with or
25   without warrant, by any law enforcement or probation officer

1    of his person in any property, house, residence, vehicle,

2    papers, computers, cellular phone, other electronic

3    communication or data storage devices, media and effects upon

4    reasonable suspicion concerning a violation of a condition of

5    supervision or unlawful conduct by the defendant or by any

6    probation officer in the lawful discharge of the officer's

7    supervision function.

8         In sentencing the defendant, the Court has

9    considered the defendant's -- the 3553 factors:  The

10   defendant is currently 42 years of age, and the sentence

11   imposed by the Court has taken into consideration his age,

12   and the age that he will be at the time he completes his

13   sentence.  The Court believes that at that point in time

14   because of age, he'll present less of a threat to the

15   community.

16        The Court has taken into consideration that the

17   defendant entered a plea of guilty to a RICO conspiracy with

18   intent to distribute cocaine, and also a conspiracy to

19   promote drug trafficking robberies, and also conspiracy to

20   commit murder, a very serious offense.

21        The defendant has a long history of criminal

22   activity, including activity that includes violence and

23   possession of weapons.  And it extends approximately 20

24   years.  He has sustained felony convictions for robbery,

25   possession of cocaine, assault with a deadly weapon, second

1        degree robbery, and he is a career offender.

2                In mitigation, the defendant has had an extremely

3        difficult upbringing, beginning at an early age.  He never

4        had a father present.  He -- his brother was murdered and it

5        appears that the murder of his brother has impacted or

6        affected his life.  Losing his brother resulted in part in

7        the defendant being drawn into a gang lifestyle activity.

8                Separate and apart from that, he suffers from

9        substance abuse, and has dealt with various stresses in life

10       by abusing various controlled substances.

11               So the Court would recommend that he be placed in a

12       facility where he can participate in the RDAP drug program

13       offered by the Bureau of Prisons.  The defendant should

14       undergo mental health screening also.

15               The Court is not going to recommend Lompoc.  Because

16       of the nature of this case, it's going to be up to the Bureau

17       of Prisons to determine the appropriate location where he

18       should be placed.

19               And I would advise you have a right to appeal.  You

20       have a right to appeal if you believe your sentence is

21       contrary to law, contrary to the plea agreement.  With few

22       exceptions, any Notice of Appeal must be filed within 14 days

23       from today's date.

24               MR. MCLAUGHLIN: Can I be heard, not so much on

25       Lompoc, if the Court is not willing to make a specific

1     recommendation to a specific facility, can it at least make a

2     recommendation to, say, Southern California or the State of

3     California?

4          THE COURT:  I'll leave it up to the Bureau of

5     Prisons.  Because of the nature of the -- of his

6     relationships with the various other members of the gang,

7     it's going to be up to the Bureau of Prisons to make a

8     determination as to where he should be housed.

9          MR. SHINER: And, Your Honor, yes, you advised the

10    defendant of his appeal rights.  But the agreed-upon appeal

11    waiver would cover his sentence in this case.  So I want to

12    make sure the defendant understands that under his appeal

13    waiver, he's waived his right to appeal.

14         THE COURT:  Yes.  And I just want to really

15    underscore, because there is others that are going to come

16    before the Court for sentencing, that in sentencing this

17    defendant, Mr. Murrley, the Court has placed great weight in

18    his age and the fact that at the time he serves his sentence

19    he, because of his age, when he's released, he will be, in

20    the Court's view, less of a physical threat to members of the

21    community.

22         Thank you.

23         MR. SHINER: And, Your Honor, the government then

24    moves to dismiss the remaining counts of the First

25    Superseding Indictment.

1          THE COURT:  The remaining counts are dismissed.

2     Thank you.

3          MR. SHINER: In the 851 allegation.

4                    *****    *****    *****

5

6     I certify that the foregoing is a correct transcript from the

7     record of proceedings in the above-titled matter.

8

9

10

11     ---------------------------

12

13     Amy C. Diaz, RPR, CRR          July 19, 2020

14     S/  Amy Diaz

15

16

17

18

19

20

21

22

23

24

25